UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| DONALD LABER, et al.,        ) | CASE NO.  5:13CV640 |
|                              ) | |
| PLAINTIFFS,   ) | JUDGE SARA LIOI |
|                              ) | |
| vs.                          ) | |
|                              ) | MEMORANDUM OPINION AND |
|                              ) | ORDER |
|                              ) | |
| UNITED STEEL, PAPER AND      ) | |
| FORESTRY, RUBBER,            ) | |
| MANUFACTURING, ENERGY,       ) | |
| ALLIED INDUSTRIAL AND        ) | |
| SERVICE WORKERS              ) | |
| INTERNATIONAL UNION, et al., ) | |
|                              ) | |
| DEFENDANTS.   ) | |

In 2006, plaintiffs Donald Laber and Douglas Whack ("plaintiffs") terminated their employment with HLI Commercial Highway, Inc. ("HLI"), a subsidiary of Hayes Lemmerz International, Inc. ("Hayes Lemmerz"), by taking advantage of a one-time voluntary separation agreement ("memorandum agreement") entered into between HLI and defendants United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers Intl. Union (the "international") and Local 21 (the "local") (collectively "defendants"). (Doc. No. 1-2, Compl. at ¶¶ 6-11.) The memorandum agreement, and the subsequent agreement entered into between HLI and the international, form the basis for this contact action.

Presently before the Court is plaintiffs' motion to remand the matter to state court (Doc. No. 7). Defendants oppose the motion (Doc. No. 10), and plaintiffs have

filed a reply (Doc. No. 11). Also before the Court is defendants' motion to dismiss the complaint for failure to state a claim (Doc. Nos. 8, 9). This motion is also fully briefed. (Doc. No. 12 [plaintiffs' opposition brief]; Doc. No. 13 [defendants' reply].) For the reasons that follow, plaintiffs' motion to remand is DENIED, plaintiffs' state law claims are preempted by federal law, and defendants' motion to dismiss is DENIED as moot.

I.      BACKGROUND

The salient facts are not in dispute. In 2004, HLI entered into a collective bargaining agreement ("CBA") with the local. The CBA was effective from August 1, 2004 to August 2, 2008. (Compl. at ¶ 8.) The parties agree that plaintiffs were members of the local and were covered by the CBA.

On July 17, 2006, defendants and HLI entered into the agreement that is at the eye of the present storm. (Compl. at ¶¶ 6-8; Doc. No. 1-2, memorandum agreement, beginning at 18.)[1] The memorandum agreement provided that bargaining unit employees with sufficient seniority were entitled to elect to voluntarily terminate their employment with HLI in exchange for three categories of benefits: "a cash award based upon seniority; a cash award aimed at bridging the gap for medical expenses until the employee becomes Medicare eligible; and extended healthcare benefits." (Memorandum Agreement at 19.) To take advantage of the agreement, qualifying bargaining unit employees were required to register their election and submit the appropriate paperwork

---

[1] The Court may consider the agreements referenced in the complaint, and attached thereto, without converting the motion to dismiss into one for summary judgment. *Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 555 (6th Cir.), *cert. denied*, 133 S. Ct. 1239 (2013). Additionally, the Court may consider such evidence for the purpose of satisfying itself that it has jurisdiction over this matter. *See Ohio Nat'l Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir. 1990).

by October 31, 2006. (Memorandum agreement at 18.) There is also no dispute that plaintiffs were third-party beneficiaries to this agreement, for they elected to voluntarily separate their employment in exchange for the specific benefits provided therein. (Compl. at ¶ 11.)

According to the complaint, the "Memorandum agreement is a contract separate and apart from" the CBA. (Compl. at ¶ 8.) The Memorandum agreement, itself, provides that it was the product of negotiations between HLI and the local that "afforded both parties full and complete opportunities to exchange and discuss proposals regarding [the] one-time" voluntary separation opportunity. (Memorandum agreement at 18). Upon executing the memorandum agreement, the parties to it "acknowledge[d] that they clearly, expressly, unequivocally, and totally waive[d] any rights to bargain over the terms set forth herein." (*Id*.)

In 2009, and subsequent to plaintiffs' respective decisions to voluntarily separate, Hayes Lemmerz sought protection under Chapter 11 of the United States Bankruptcy Code. (Compl. at ¶ 17.) During the course of the bankruptcy, Hayes Lemmerz and the international entered into an agreement "for the purpose of negotiating a modification of 'retiree benefits,' as defined in Section 1114(a) of the Bankruptcy Code[.]" (Doc. No. 1-2, bankruptcy agreement, beginning at 25; Compl. at ¶ 19.) The bankruptcy agreement made no reference to plaintiffs' rights arising under the memorandum agreement, and Hayes Lemmerz did not list plaintiffs as creditors of the bankruptcy estate in sufficient time to permit plaintiffs to file a proof of claim. (Compl. at ¶ 18.)  Nonetheless, the bankruptcy agreement had the effect of modifying the medical

3

benefits of *all* retirees of Hayes Lemmerz and its affiliates, including those who had exercised their rights under the memorandum agreement. (Compl. at ¶¶ 21-23.)

On February 25, 2013, plaintiffs brought suit against defendants in the Summit County Court of Common Pleas. The complaint contained two claims, one for breach of contract and a second claim for tortious interference with contractual and business relations, with the memorandum agreement serving as the foundation for both claims. The complaint purports to rest on state common law, and is free of any reference to federal law.

On March 25, 2013, defendants removed the action to this Court on the basis of federal question jurisdiction under 28 U.S.C. §§ 1441 and 1446. Noting that the complaint alleges a breach of an agreement between a union and an employer, defendants contend that plaintiffs' claims are governed by § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "which provides federal jurisdiction over suits for 'violation of contracts between an employer and a labor organization.'" (Doc. No. 1, Notice of Removal, at 3 [quoting *DeCoe v. GMC*, 32 F.3d 212, 215 (6th Cir. 1994)].)

**II.      MOTION TO REMAND**

*A.      Standard of Review*

A defendant may remove to federal court only actions that originally could have been filed in federal court. *Jefferson County v. Acker*, 527 U.S. 423, 430, 119 S. Ct. 2069, 144 L. Ed. 2d 408 (1999); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987). As a court of limited jurisdiction, a federal district court has the duty to remand a case where federal jurisdiction is lacking. 28 U.S.C. §

4

1447(c). All doubts as to the existence of federal jurisdiction are resolved in favor of remand. *Coyne v. Am. Tobacco Co.*, 183 F.3d 488, 493 (6th Cir. 1999).

The parties agree that diversity is incomplete, and therefore cannot provide a basis for jurisdiction. Accordingly, this Court has jurisdiction over this case, if at all, based upon the presence of a federal question. To remove a case on the basis of this doctrine, "the federal question ordinarily must appear on the face of a properly pleaded complaint; an anticipated or actual federal defense generally does not qualify a case for removal." *Jefferson County*, 527 U.S. at 430-31 (citing *Louisville & Nashville R. Co. v. Mottley*, 211 U.S. 149, 152, 29 S. Ct. 42, 53 L. Ed. 126 (1908)). In the normal course of events, the job of the district court is limited to examining the well-pleaded complaint allegations to determine whether "federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law . . . , in that 'federal law is a necessary element of one of the well pleaded . . . claims.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 808, 108 S. Ct. 2166, 100 L. Ed. 2d 811 (1988) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust*, 462 U.S. 1, 13, 27-28, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)).

It is plaintiffs' position that, as the masters of their complaint, they have avoided federal jurisdiction by confining their claims exclusively within the boundaries of state law contract and tort principles. *Caterpillar*, 482 U.S. at 392 (because the plaintiff is considered to be the "master of his complaint," the well-pleaded complaint doctrine generally dictates that a plaintiff may avoid federal jurisdiction by relying

exclusively on state law). Defendants, on the other hand, insist that plaintiffs' claims are preempted by federal law.

### B. Section 301 Preemption

"One of the few exceptions to the well-pleaded complaint rule is complete preemption, which 'applies in circumstances in which Congress may intend the preemptive force of a federal statute to be so extraordinary that any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law.'" *Paluda v. ThyssenKrupp Budd Co.*, 303 F. App'x 305, 308 (6th Cir. 2008) (quoting *Mikulski v. Centerior Energy Corp.*, 501 F.3d 555, 563 (6th Cir. 2007) (en banc) (further citations omitted)). According to defendants, plaintiffs' state law claims are completely preempted by § 301 of the Labor Management Relations Act ("LMRA").

Section 301 provides:

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a). Where applicable, the preemptive force of § 301 is so powerful that it entirely displaces any state cause of action for violation of contracts between an employer and a union. *Caterpillar*, 482 U.S. at 394. Thus, where the essence of a state law claim is a provision in a collective bargaining agreement, that claim arises under federal law, and is completely preempted. *Id.* at 394 (quoting *Avco Corp. v. Machinists*, 390 U.S. 557, 558, 88 S. Ct. 1235, 20 L. Ed. 2d 126 (1968)).

6

"[T]he subject matter of § 301(a) 'is peculiarly one that calls for uniform law. . . . The possibility that individual contract terms might have different meanings under state and federal law would inevitably exert a disruptive influence upon both the negotiation and administration of collective agreements." *Teamsters Local 174 v. Lucas Flour Co.*, 369 U.S. 95, 103, 82 S. Ct. 571, 7 L. Ed. 2d 593 (1962) (quotations omitted). "The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation." *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985).

Given the need for uniformity in the interpretation and application of collective bargaining agreements, "state law does not exist as an independent source of private rights to enforce collective-bargaining contracts." *Caterpillar*, 482 U.S. at 394 (internal quotation and citation omitted). "Moreover, the Supreme Court has refused to allow artful pleading to circumvent the power of § 301's preemptive force. Form is not to triumph over substance as employees relabel contract claims as claims for tortuous breach of a contract." *Davis v. Bell Atlantic-West Virginia*, 110 F.3d 245, 247 (4th Cir. 1997) (citing *Allis-Chalmers*, 471 U.S. at 211).

While § 301 preemption is clearly expansive, not all state law claims finding their genesis in labor relations are preempted. *See Livadas v. Bradshaw*, 512 U.S. 107, 123, 114 S. Ct. 2068, 129 L. Ed. 2d 93 (1994) (Section 301 does not "preempt nonnegotiable rights conferred on individual employees as a matter of state law . . . ."). "[I]t is the legal character of a claim, as 'independent' of rights under the collective

7

bargaining agreement (and not whether a grievance arising from 'precisely the same set of facts' could be pursued) that decides whether a state action may go forward." *Livadas*, 512 U.S. at 123-24 (internal citations omitted).

The Sixth Circuit employs a two-step inquiry for determining whether a claim is sufficiently independent of the collective bargaining agreement to survive complete preemption under § 301 of the LMRA:

> We first look to whether "resolving the state-law claim would require interpretation of the terms of the collective bargaining agreement," and, alternatively, "whether the rights claimed by the plaintiff were created by the collective bargaining agreement, or, instead, by state law." *Mattis v. Massman*, 355 F.3d 902, 906 (6th Cir. 2004). "In short, if a state-law claim fails either of these two requirements, it is preempted by § 301." *Id*. This Court has also noted that "where a plaintiff's state-law claims cannot be directly connected to the terms of the CBA, they are not preempted," and that "merely consulting a CBA in the course of adjudicating state law claims is not enough." *Valinski v. Edison*, 197 [F. App'x] 403, 409 (6th Cir. 2006).

*Klepsky v. United Parcel Serv., Inc.,* 489 F.3d 264, 269-70 (6th Cir. 2007); *see Alongi v. Ford Motor Co.*, 386 F.3d 716, 724 (6th Cir. 2004) (citing *DeCoe*, 32 F.3d at 216).

Plaintiffs posit that they carefully crafted their state law claims to be wholly independent of the collective bargaining agreement, with any right to damages flowing exclusively from the memorandum agreement. (Compl. at ¶ 32; Motion to Remand at 76.) However, before the Court can consider whether plaintiffs' claims are independent of the August 4, 2004 collective bargaining agreement, it must answer the more fundamental question of whether the memorandum agreement should be considered a collective bargaining agreement, or, at the very least, a "contract[] between an employer and a labor organization" under the LRMA.

8

"Collective bargaining has been defined as bargaining by an organization or group of workmen on behalf of its members with the employer, as well as the settlement of disputes by negotiation between an employer and the representative of his employees." *Thomas v. LTV Corp.*, 39 F.3d 611, 618 (5th Cir. 1994). "A collective bargaining agreement is an effort to set forth a whole system of 'industrial self-government.'" *Id.* (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 580, 80 S. Ct. 1347, 4 L. Ed. 2d 1409 (1960)). Generally, such an agreement covers a broad range of topics important to the workplace and working conditions. However, even agreements which touch upon less than the "whole system of industrial self-government" have been treated as "contracts" under § 301 and given preemptive effect over state law claims.

In *Thomas*, the court found that an individual attendance agreement between an employee and his employer was to be analyzed for preemptive purposes just as if it were a collective bargaining agreement. In reaching this conclusion, the court noted that the union was aware of the disciplinary proceedings that had precipitated the attendance agreement and had participated in the presentation of the agreement to Thomas. *Id*. Also significant to the court's determination was the fact that the agreement required the employee to waive grievance and arbitration proceedings that would have otherwise been available under the collective bargaining agreement. *Id.*; *accord Davis*, 110 F.3d at 249 (employee settlement agreement reinstating employee was merely a rider to the collective bargaining agreement, and any state law claim based upon it was completely preempted by § 301).

Courts have also given preemptive effect to negotiated agreements that resolve discrete workplace disputes. In *Retail Clerks Int'l Ass'n v. Lion Dry Goods, Inc.*, 369 U.S. 17, 27-28, 82 S. Ct. 541, 7 L. Ed. 2d 503 (1962), the Supreme Court found that § 301 governed a claim that the employer had violated a negotiated agreement resolving a strike at a plant closure. While the agreement was more limited in scope than a traditional collective bargaining agreement, it qualified as a "contract" under § 301, conferring federal jurisdiction over the claim. *See, e.g., Hughes v. UAW Local 2255*, 131 F. App'x 379, 380 (3d Cir. 2005) (federal law preempted plaintiff's contract and tort claims grounded in the breach of a collectively bargained for voluntary retirement program); *Beidleman v. The Stroh Brewery Co.*, 182 F.3d 225 (3d Cir. 1999) (motion for remand properly denied where plant closing agreement that ended strike was a labor contract under § 301).

A common thread running through these cases is the presence of union negotiation. *See, e.g.*, *Retail Clerks Int'l Ass'n*, 369 U.S. at 28 ("It is enough that this is clearly an agreement between employers and labor organizations significant to the maintenance of peace between them."); *Davis*, 110 F.3d at 248 (emphasizing that the settlement agreement was signed by Davis, the employer, and the union); *Beidleman*, 182 F.3d at 231 ("the 1985 closing agreement is readily distinguishable from the agreement at issue in *Caterpillar*. Most significant, the 1985 closing agreement was bargained for and negotiated by Stroh and the labor unions . . . ."); *Thomas*, 39 F.3d at 618 ("it is undisputed that [the attendance agreement] was negotiated and entered into by LTV, the UAW, and Thomas"); *but see Tazelaar v. Integrated Metal Tech., Inc.*, File Nos. 1:90-

CV-274, 1:90-CV-321, 1:90-CV-363, 1991 WL 332636, at *6 (W.D. Mich. Apr. 12, 1991) (finding that an employer's letter making certain promises after the current bargaining agreement had expired was not a labor contract under § 301 because it was not the result of negotiations with the union). Union involvement is one of the defining features that separates labor contracts from those that are wholly independent and not subject to the LMRA.

This feature of union involvement is clearly present in the memorandum agreement. The employer and the union were the only parties to the agreement, even though plaintiffs were third-party beneficiaries. The agreement was the result of negotiations that addressed an important issue arising out of the employment relationship, namely, a one-time voluntary separation plan. The agreement even had the effect of redefining rights under the collective bargaining agreement, as it waived certain rights guaranteed by the collective bargaining agreement in favor of specific benefits gained through the one-time opportunity to retire early. *See, e.g., Thomas*, 39 F.3d at 618. While it was more limited in scope than a traditional collective bargaining agreement, the memorandum agreement is certainly the type of labor contract that is contemplated by § 301.

The complaint is clear that plaintiffs' contract claim is entirely dependent upon an interpretation of the memorandum agreement, which this Court has determined is a labor contract under § 301, and the rights claimed by plaintiffs arise solely out of that

...

agreement.[2] (*See* Compl. at ¶ 32; Plaintiff's Motion to Remand at 76.) Because plaintiffs' contract claim impermissibly looks to state law as an independent source of enforcement for a labor contract, it is preempted by federal law. *See Caterpillar*, 482 U.S. at 394.

The same holds true for plaintiffs' tort claim. A tortious interference with contractual relations claim is preempted by federal law if the breach of a contract is an "essential element" of such a state law claim. *Fox v. Parker Hannifin Corp.*, 914 F.2d 795, 800 (6th Cir. 1990). Under Ohio law, the "intentional procurement of the contract's breach" is an essential element of a tortious interference with contract claim. *Kenty v. Transamerica Premium Ins. Co.*, 72 Ohio St. 3d 415, 419 (1995). "'The elements of tortious interference with a business relationship are (1) a business relationship, (2) the wrongdoer's knowledge thereof, (3) an interference causing a breach or termination of the relationship, and (4) damages resulting therefrom.'" *Harris v. Bornhorst*, 513 F.3d 503, 523 (6th Cir. 2008) (quoting *McConnell v. Hunt Sports Enters.*, 132 Ohio App. 3d 657, 689 (Ohio Ct. App. 1999)). The business relationship at issue here, according to the complaint, is the right to file a claim with the bankruptcy trustee based on plaintiffs' standing as third-party beneficiaries to the memorandum agreement. (Compl. at ¶ 35.) This claim, also, depends entirely upon the rights secured under the memorandum agreement, and is, therefore, preempted.

---

[2] To set forth a claim for breach of contract under Ohio law, plaintiffs would have to establish "a contract existed, the plaintiff[s] performed, the defendant[s] breached, and the plaintiff[s] suffered damages." *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 565 (6th Cir. 2006) (citing *Wauseon Plaza Ltd. Partnership v. Wauseon Hardware Co.*, 156 Ohio App. 3d 575 (Ohio Ct. App. 2004)).

12

The preemption of plaintiffs' state law claims by the LMRA provides this Court with federal question jurisdiction, and, therefore, plaintiffs' motion to remand is DENIED.

In *Allis-Chalmers*, the Supreme Court held that a preempted state-law claim may be dismissed or adjudicated as a § 301 claim. *Alllis-Chalmers*, 471 U.S. at 220. Plaintiffs have not pleaded facts sufficient to support a claim under § 301. A hybrid § 301 claim has two elements: breach of a collective bargaining agreement by the employer and breach of the duty of fair representation by the union. *See Garrison v. Casens Transp. Co.*, 334 F.3d 528, 538 (6th Cir. 2003). Even if plaintiffs' allegations could be construed as asserting a claim that defendants violated their duty of fair representation, plaintiffs have failed to assert any facts supportive of a claim against their former employer.[3] Because plaintiffs' complaint fails to state a claim under § 301, it is subject to dismissal. *See Simoneau v. GMC*, 85 F. App'x 445, 448 (6th Cir. 2003) (A complaint that fails to allege that the union breached its duty of fair representation "fail[s] to allege an essential element of a hybrid § 301 claim.").

Notwithstanding plaintiffs' emphatic reluctance to assert a claim under federal law, the Court will, in an abundance of caution, afford plaintiffs leave to amend their complaint to set forth a claim under the LMRA. However, one observation may be

---

[3] Plaintiffs actually emphasize this point in support of their motion to remand. (Motion to Remand at 80 ["Plaintiffs' former employer is not joined as a defendant as would be required in a 'hybrid § 301' action for breach of a union's duty of fair representation."]). While a plaintiff bringing a hybrid § 301 claim may elect to sue either their employer, or the union, or both, *see DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 165, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983), it is clear that plaintiffs never intended to bring such a claim against either.

made. It is well settled that a six-month statute of limitation applies to hybrid § 301 claims. *See DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 169, 103 S. Ct. 2281, 76 L. Ed. 2d 476 (1983); *Garrish v. UAW*, 417 F.3d 590, 594 (6th Cir. 2003). Since the present action was filed in state court several years after the proceedings in bankruptcy court, relief is time-barred unless plaintiffs did not discover and had no reason to discover the relevant bankruptcy-related agreement. Nonetheless, rather than rule on an un-briefed issue, the Court, if necessary, will reserve consideration of the timeliness of any § 301 claim for another day.

### III. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion to remand is DENIED, plaintiffs' breach of contract and tortious interference with contract claims are DISMISSED, and plaintiffs are afforded fourteen (14) days to file a motion for leave to amend their complaint, along with a proposed amended complaint. Defendants' motion to dismiss, premised on the theory that plaintiffs' claims were not preempted, is DENIED as moot. If plaintiffs do not timely file a conforming amended complaint, the Court will dismiss the action.

**IT IS SO ORDERED**.

Dated: January 31, 2014

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**