UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DONALD LABER, et al., | ) | CASE NO.  5:13CV640 |
| | ) | |
| PLAINTIFFS, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| | ) | |
| UNITED STEEL, PAPER AND | ) | |
| FORESTRY, RUBBER, | ) | |
| MANUFACTURING, ENERGY, | ) | |
| ALLIED INDUSTRIAL AND | ) | |
| SERVICE WORKERS | ) | |
| INTERNATIONAL UNION, et al., | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court is a series of motions filed by plaintiffs, all of which, in one way or another, seek relief from the Court's January 31, 2014 Memorandum Opinion and Order (hereinafter, "Opinion") denying plaintiffs' motion to remand this matter to state court. (Doc. No. 14; *see* Mot. to Remand, Doc. No. 7.) Herein, the Court shall address the following motions: plaintiffs' motion for reconsideration (Doc. No. 15), plaintiffs' motion to certify a question for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) (Doc. No. 16), and plaintiffs' motion for an extension of time in which to amend

the complaint to assert a common law fraud claim (Doc. No. 17).[1] Defendants have filed an opposition to each motion (Doc. Nos. 19 [opposition to motion to reconsider], 20 [opposition to motion to certify], and 24 [opposition to motion for an extension of time to amend]), and plaintiffs have filed a combined reply brief that further addresses all three motions (Doc. No. 22).

## I. BACKGROUND

The facts surrounding the present litigation have been set forth in substantial detail in the Opinion. In order to properly frame the pending motions, an abbreviated fact summary follows.

On February 25, 2013, plaintiffs, Donald Laber and Douglas Whack, filed a lawsuit in the Summit County Court of Common Pleas against defendants, United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union ("the international") and Local 21 ("the local"), alleging breach of contract and tortious interference with contractual and business relations. (Compl., Doc. No. 1-2.)[2] Defendants removed the action to this Court on March 25, 2013, claiming federal jurisdiction under § 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. (Notice of Removal, Doc. No. 1, at 3.)[3]

Plaintiffs were employees of HLI Commercial Highway, Inc. ("HLI"), a subsidiary of Hayes Lemmerz International, Inc. ("Hayes Lemmerz"). (Compl. ¶ 5.) In

---

[1] Plaintiffs have also moved for oral argument on their pending motions (Doc. No. 18). Because the Court finds that it can resolve the pending motions without additional argument from counsel, the request for oral argument is DENIED.

[2] In the complaint, the international was identified as "United Steel Workers of America." (*Id.*)

[3] All page number references are to the page identification number generated by the Court's electronic docketing system.

2004, HLI entered into a collective bargaining agreement ("CBA") with the local. (*Id.* ¶ 8.) Plaintiffs were members of the bargaining unit covered by the CBA. On July 17, 2005, defendants and HLI entered into an agreement that extended to bargaining unit employees with sufficient seniority a one-time opportunity to voluntarily terminate their employment with HLI in exchange for certain benefits, including those relating to healthcare (hereinafter, "memorandum agreement"). (*Id.* ¶¶ 6-8; memorandum agreement, Doc. No. 1-2.) In 2006, plaintiffs exercised their rights under the memorandum agreement and voluntarily separated their employment from HLI. (*See id.* ¶ 11.)

In 2009, Hayes Lemmerz sought protection under Chapter 11 of the United States Bankruptcy Code. (Compl. ¶ 17.) During the course of the bankruptcy proceedings, Hayes Lemmerz and the international entered into an agreement "for the purpose of negotiating a modification of 'retiree benefits,' as defined in Section 1114(a) of the Bankruptcy Code[.]" (bankruptcy agreement, Doc. No. 1-2, beginning at 25; Compl. ¶ 19.) The bankruptcy agreement made no reference to plaintiffs' rights arising under the memorandum agreement, and Hayes Lemmerz did not list plaintiffs as creditors of the bankruptcy estate in sufficient time to permit plaintiffs to file a proof of claim. (Compl. ¶ 18.) Nevertheless, the bankruptcy agreement had the effect of modifying the medical benefits of all retirees of Hayes Lemmerz and its affiliates, including those—like plaintiffs—who had exercised their rights under the memorandum agreement. (Compl. ¶¶ 21-23.) None of the foregoing is in dispute.

On April 24, 2013, plaintiffs moved to remand this action to state court. It was plaintiffs' position that they had carefully crafted their complaint to avoid federal

3

jurisdiction by couching their claims in state law contract and tort principles. They further insisted that their claims were wholly independent of the collective bargaining agreement, with any right to damages flowing exclusively from the memorandum agreement. (*See* Compl. ¶ 32; Mot. to Remand at 76.)

The Court agreed with plaintiffs to a point. It observed that plaintiffs' contract rights were indeed tied to the memorandum agreement, but found that this supplemental agreement, itself, was a contract between an employer and a labor organization, such that it fell within the purview of § 301. (Opinion at 172-74.) Applying the two-step inquiry appropriate for complete preemption, the Court found that plaintiffs' claims were entirely dependent upon an interpretation of the memorandum agreement, and that they arose out of that agreement. (*Id*. at 169, 172-73.) Because plaintiffs failed to state a claim under § 301, the Court afforded plaintiffs leave to amend their complaint to assert such a claim. Instead, plaintiffs elected to file the pending motions.

## II.  PLAINTIFFS' MOTION FOR RECONSIDERATION

### A.  Standard of Review

Although a motion for reconsideration is not mentioned in the Federal Rules of Civil Procedure, it is often treated as a motion to alter or amend pursuant to Rule 59(e). *McDowell v. Dynamics Corp. of Am.*, 931 F.2d 380, 382 (6th Cir. 1991) (citing *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979)). The purpose of a motion to alter or amend judgment is to request reconsideration of matters "properly encompassed in a decision on the merits." *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 174, 109 S. Ct. 987, 103 L. Ed. 2d 146 (1989). "It is not the function of a motion to reconsider either to renew arguments already considered and rejected by a court or 'to proffer a new legal

4

theory or new evidence to support a prior argument when the legal theory or argument could, with due diligence, have been discovered and offered during the initial consideration of the issue.'" *McConocha v. Blue Cross and Blue Shield Mut. of Ohio*, 930 F. Supp. 1182, 1184 (N.D. Ohio 1996) (quoting *In re August, 1993 Regular Grand Jury*, 854 F. Supp. 1403, 1408 (S.D. Ind. 1994)). In other words, Rule 59(e) is not designed to give an unhappy litigant an opportunity to relitigate matters already decided. *See Dana Corp. v. United States*, 764 F. Supp. 482, 488-89 (N.D. Ohio 1991) (citation omitted).

Generally, only three situations justify a district court in altering or amending its judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or to prevent a manifest injustice. *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (citing *Reich v. Hall Holding Co.*, 990 F. Supp. 955, 965 (N.D. Ohio 1998)). Moreover, the motion for reconsideration must demonstrate to the court why it should reconsider its decision and set forth strongly convincing facts or law that would induce it to reverse its prior decision. *Shields v. Shetler*, 120 F.R.D. 123, 126 (D. Colo. 1988).

B. **Analysis**

Rather than attempt to fit their request for reconsideration into one of the three situations set out above, plaintiffs rely on two recent unreported cases from this judicial district to suggest that § 301 cannot supply the necessary subject matter jurisdiction to keep this case in federal court. Plaintiffs cite *Wayt v. DHSC, LLC*, No. 5:12-CV-3048, 2013 WL 3459229 (N.D. Ohio July 9, 2013), for the general proposition that "complete preemption" is sparingly applied in the law. (Mot. at 177 [quoting *Wayt*,

5

2013 WL 3459229, at *3].) They also look to the language in *Dobrski v. Kalinowski*, No. 1:13-CV-2841, 2014 WL 185789 (N.D. Ohio Jan. 16, 214), that a properly pled affirmative defense cannot "provide a basis for removal to federal court." (*Id*. [quoting *Dobrski*, 2014 WL 185789, at *2].) Neither of these cases espoused any new notions regarding federal preemption. Nevertheless, the factual and procedural differences between these cases and the present action actually serve to underscore why plaintiffs' current claims are completely preempted.

In *Wayt*, this Court found that the defendants had waived their argument that § 301 completely preempted plaintiffs' state law claims, and further found that the National Labor Relations Act ("NLRA") could not supply the necessary jurisdiction to support removal of plaintiffs' state law claims. *Wayt*, 2013 WL 3459229, at *3-4. Thus, in remanding the case to state court, the Court drew an important distinction between conflict preemption, which cannot support the removal of state law claims, and complete preemption, which can. *See id*. at *4 ("§ 301 of the LMR is an entirely different ground [for preemption] than §§ 7 and 8 of the NLRA") (citation omitted); *see generally Warner v. Ford Motor Co.*, 46 F.3d 531, 533-34 (6th Cir. 1995) (en banc) (discussing the difference between conflict and complete preemption).

"Conflict preemption arises where compliance with both federal and state law is physically impossible, or 'where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Puterbaugh v. AirTran Airways*, 494 F. Supp. 2d 597, 600 (S.D. Ohio 2003) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67, 61 S. Ct. 399, 85 L. Ed. 581 (1941)) (further citations omitted). This type of preemption usually does not give rise to federal-question

6

subject matter jurisdiction, and normally cannot make a state case removable to federal court. *See Tisdale v. United Ass'n of Journeymen*, 25 F.3d 1308, 1311 (6th Cir. 1994).

"In contrast, '[i]f Congress evidences an intent to occupy a given field, any state law falling within that field is [completely] preempted.'" *Putterbaugh*, 494 F. Supp. 2d at 601 (quoting *Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 103 S. Ct. 1713, 75 L. Ed. 2d 752 (1983)). Where the federal law's preemptive force is deemed "complete," "then the state law claim is displaced by the federal cause of action, and the action is subject to removal." *Loftis v. United Parcel Serv., Inc.*, 342 F.3d 509, 515 (6th Cir. 2003) (citations omitted); *see Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8, 123 S. Ct. 2058, 156 L. Ed. 2d 1 (2003) ("When the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399, 107 S. Ct. 2425, 96 L. Ed. 2d 318 (1987) ("When a plaintiff invokes a right created by a collective-bargaining agreement, the plaintiff has *chosen* to plead what we have held must be regarded as a federal claim, and removal is at the defendant's option.") (emphasis in original).

The Supreme Court and the Sixth Circuit have repeatedly identified § 301 of the LMRA as one of the few statutes to which the complete preemption rule applies. *See Beneficial Nat'l Bank*, 539 U.S. at 6-7; *Caterpillar*, 482 U.S. at 393 ("The complete pre-emption corollary to the well-pleaded complaint rule is applied primarily in cases raising claims preempted by § 301 of the LMRA."); *Roddy v. Grand Trunk W. R.R. Inc.*,

7

395 F.3d 318, 323 (6th Cir. 2005); *Alongi v. Ford Motor Co.*, 386 F.3d 716, 723-24 (6th Cir. 2004).

Unlike the situation in *Wayt*, defendants here removed plaintiffs' state law claims to this Court on the strength of § 301 preemption. While complete preemption is "of very limited application[,]" *Wayt*, 2013 WL 3459229, at *3, suits asserting "violation of contracts between an employer and a labor organization[,]" *id.* at *4, n.3, such as the present case, are the very type of state law actions for which the complete preemption rule was meant to apply. 29 U.S.C. § 185(a); *see, e.g., Farmer v. Gen. Mills Cereals Prop., LLC*, No. C-1-05-100, 2005 WL 1705090, at *4-5 (S.D. Ohio July 20, 2005) (former employee's breach of contract claim, premised on his company's refusal to honor a restructuring agreement between the employer and the union, was preempted by § 301 of the LRMA).

Plaintiffs' reliance on the decision in *Dobrski* does not change the analysis or the conclusion. There, the plaintiff brought suit against the defendant in state court, asserting claims sounding in defamation and libel. The plaintiff's complaint did not reference any federal law, or otherwise suggest that any asserted rights flowed from a labor contract. The defendant removed the claims raising federal preemption as a defense and suggesting that plaintiffs' concerns stemmed from a collective bargaining agreement. In remanding the case to state court, the district court echoed the Supreme Court's caution that "'a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule-that the plaintiff is the master of the complaint, that a federal question must appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the

cause heard in state court.'" *Dobrski*, 2014 WL 185789, at *2 (quoting *Caterpillar*, 482 U.S. at 398-99).

As this Court has previously determined, a federal question appears on the face of plaintiffs' complaint because their contract and tort claims arise out of, and are entirely dependent upon, defendants' alleged breach of the memorandum agreement.[4] (Opinion at 172-73; *see* Compl. ¶ 32 [defendants "breached the [m]emorandum [a]greement by modifying [the agreement] to the detriment of [p]laintiffs as intended or creditor beneficiaries, causing damage . . . ."], ¶ 35 [defendants caused "Hayes Lemmerz to breach the [m]emorandum [a]greement"], ¶ 36 [the breach resulted in damages to plaintiffs].) Section 301 preemption, therefore, has not been raised in a defensive argument. Because the memorandum agreement, in turn, qualifies as a labor contract under § 301, plaintiffs' reliance upon it supplies the necessary federal jurisdiction to support defendants' removal. *See Beneficial Nat'l Bank*, 539 U.S. at 6-7; *Alongi*, 386 F.3d at 723-24. Under these circumstances, "removal [was] at defendant[s'] option." *Caterpillar*, 482 U.S. at 393.

The Court finds no reason to disturb its initial determination that this case was properly removed. Plaintiffs' motion for reconsideration, therefore, is DENIED.

---

[4] Plaintiffs' argument that there is no dispute as to whether defendants violated the terms of the memorandum agreement misses the point. (Mot. at 176 [While conceding that the memorandum agreement is "at the center of the dispute[,]" plaintiffs argue that "legal interpretation of [the] terms is not at issue given the undisputed refusal by [d]efendants to honor the memorandum agreement." (*Id*. at 176-77.) The contract claim is, by its very nature, a suit "for violation of [a] contract[] between an employer and a labor organization[.]" 29 U.S.C. § 185(a); *see Textron Lycoming Reciprocating Engine Div., Avco Corp. v. U.A.W.*, 523 U.S. 653, 656, 118 S. Ct. 1626, 140 L. Ed. 2d 863 (1998).

### III. PLAINTIFFS' MOTION TO AMEND

#### A. Standard of Review

As an alternative avenue for relief, plaintiffs seek leave to amend their complaint to raise a common law fraud claim. After a responsive pleading is filed, the complaining party may amend the pleadings only with the opposing party's written consent or by leave of court. Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id*. The decision whether to permit the amendment is committed to the discretion of the trial court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330, 91 S. Ct. 795, 28 L. Ed. 77 (1971); *Estes v. Ky. Util. Co.*, 636 F.2d 1131, 1133 (6th Cir. 1980). The trial court's discretion, however, is "limited by Fed. R. Civ. P. 15(a)'s liberal policy of permitting amendments to ensure the determination of claims on their merits." *Marks v. Shell Oil Co.*, 830 F.2d 68, 69 (6th Cir. 1987) (citation omitted).

"Leave to amend may be denied when it would result in undue delay, prejudice to the opposing party, or repeated failure to cure deficiencies in the complaint." *Phelps v. McClellan*, 30 F.3d 658, 662 (6th Cir. 1994) (citing, among authorities, *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962)).

When a party has delayed in seeking amendment, the court weighs the cause shown for the delay against the resulting prejudice to the opposing party. *Head v. Timken Roller Bearing Co.*, 486 F.2d 870, 874 (6th Cir. 1973). "In determining what constitutes prejudice, the court considers whether the assertion of the new claim or defense would: require the opponent to expend significant additional resources to conduct discovery and prepare for trial; significantly delay the resolution of the dispute; or

prevent the plaintiff from bringing a timely action in another jurisdiction." *Phelps*, 30 F.3d at 662-63 (citation omitted). The longer the period of unexplained delay, the less prejudice the adverse party will be required to show to defeat the motion. *Id.* at 662 (citation omitted).

Additionally, leave to amend should be denied "if the amendment . . . would be futile." *Carson v. U.S. Office of Special Counsel*, 633 F.3d 487, 495 (6th Cir. 2011) (quotation marks and citation omitted); *see Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001). "Amendment of a complaint is futile when the proposed amendment would not permit the complaint to survive a motion to dismiss." *Miller v. Calhoun Cnty.*, 408 F.3d 803, 817 (6th Cir. 2005) (citation omitted)

**B.     Analysis**

As grounds for their motion to amend to add a fraud claim, plaintiffs represent that they "were deliberately misled on several occasions by [d]efendants and representatives of [d]efendants into believing their claims pled in this action were being compromised and resolved to [p]laintiffs' satisfaction within six months of [p]laintiffs' awareness of their former employer's pertinent bankruptcy filings. Plaintiffs believed they had legal counsel and business representation protecting them as extended by [d]efendants." (Mot. at 181.)

Defendants posit that plaintiff's request for leave to amend should be denied as futile because plaintiffs' proposed fraud claim, like the contract and tortious interference claims, would be completely preempted. In support, defendants direct the Court's attention to the Sixth Circuit's decision in *Adkins v. Gen. Motors Corp.*, 946 F.2d

11

1201 (6th Cir. 1991), suggesting that the case is on all fours with the factual allegations presented in plaintiffs' proposed fraud claim.

In *Adkins*, plaintiffs, who were former employees of a car manufacturer, alleged that their former employer colluded with the union in negotiating a collective bargaining agreement that had the effect of abrogating certain seniority rights contained in a prior labor contract known as the "bridge agreement." In their state fraud claim, the plaintiffs alleged that they were not told that the new collective bargaining agreement would terminate their rights under the bridge agreement, and that they received assurances from their union president prior to and after the ratification of the new CBA that their rights under the bridge agreement would be preserved. According to the plaintiffs, the union had fraudulently induced them to ratify a CBA that was not in their interests. *Adkins*, 946 F.2d at 1203-04.

The court began with the requirements of fraud under Ohio law that there must be a misrepresentation or concealment of a material fact that the concealing party knew to false but offered, nonetheless, with the intent to induce the other party to rely to his or her detriment. In order to make such a determination, the court noted that any trial court would be required to analyze both the "bridge agreement" and the new collective bargaining agreement.[5] *Id*. at 1209-10. In finding plaintiffs' fraudulent inducement claims preempted under § 301, the court reasoned that the claims were "so intertwined with the terms of the collective-bargaining agreement present in the case that they may not be

---

[5] The court emphasized that "[t]he critical inquiry is whether a court adjudicating this claim must determine rights arising under a collective bargaining agreement." *Adkins*, 946 F.2d at 1209. It concluded that, in the case before it, "[i]t surely must, if plaintiffs are alleging that the president of Local 801 concealed from them the fact of their loss of 'bridge agreement rights.'" *Id*.

12

separated. *Id*. at 1209-10 (citing *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213, 105 S. Ct. 1904, 85 L. Ed. 2d 206 (1985)).

Defendants insist that *Adkins* is the beginning and end of the story because, like the plaintiffs in *Adkins*, plaintiffs here are attempting to claim that their union concealed from them the fact that their contract rights would be compromised by a subsequent agreement. (Opp. at 224.) According to defendants, "*Adkins* is controlling and would require dismissal of plaintiffs' proposed fraud claim." (*Id*.) The decision in *Adkins* was not, however, the last word on the subject. There were two subsequent decisions that must be considered before the Court may determine whether plaintiffs' proposed fraud claim would be completely preempted.

Eight years after the Sixth Circuit's decision in *Adkins*, the Supreme Court issued its decision in *Textron Lycoming Reciprocating Engine Div., Avco Corp. v. U.A.W.*, 523 U.S. 653, 118 S. Ct. 1626, 140 L. Ed. 2d 863 (1998). In *Textron*, the union and the employer entered into a collective bargaining agreement that prohibited striking for any reason. Pursuant to a separate agreement, the employer was required to give the union advance notice of any plans to subcontract out union work. When the employer subsequently announced that it would subcontract out a volume of work—resulting in the loss of union jobs—the union brought suit. The union claimed that it was fraudulently induced by the employer to enter into the collective bargaining agreement. In support, the union alleged that both before and during negotiations, the union repeatedly asked for any information on anticipated outsourcing but no such information was forthcoming from the employer—even though such plans were in existence. *Textron*, 523 U.S. at 654-55.

13

The Supreme Court found that the fraud claim was not completely preempted by § 301. Turning to the language of § 301, the Court emphasized that, "[b]y its terms, this provision confers federal subject-matter jurisdiction only over '[s]uits for violation of contracts.'" *Id*. at 656. The union, however, had not alleged that the employer had violated the collective bargaining agreement, and, in fact, the union represented that both parties were in complete compliance with the agreement. The union merely alleged that the agreement was the product of fraud. *Id*. at 658. Without a claim to enforce a labor agreement, the Court concluded that the action had been improperly brought in federal court. *Id*.

The Sixth Circuit revisited the issue of fraud claims in the context of employer/union relations in its decision in *Alongi v. Ford Motor Co*., 386 F.3d 716 (6th Cir. 2004). There, the union and the employer negotiated a six-year collective bargaining agreement covering plant employees that contained no specific provision for job security. A year later when the employer announced that it was closing the plant, the laid-off union employees brought suit. The original complaint contained a fraud claim wherein plaintiffs alleged that the employer's representative made knowing misrepresentations during the CBA negotiations that the plant would remain open for six years. *Id*. at 720. After the district court ruled that the claim was preempted by § 301, the plaintiffs amended their claim to allege that similar representations were made following the ratification of the agreement. *Id*. at 721.

The court ruled that the amended fraud claim was not preempted by § 301, noting that it resembled the fraud claim brought in *Textron*.[6] The court reasoned that the employer's alleged "individual promises" and "personal guarantees" to the plaintiffs that the plant would remain open were separate and apart from the collective bargaining agreement and would not require the fact finder to apply the provisions of the collective bargaining agreement, "but only to determine whether [the employer's] representative made the statements alleged, and whether plaintiffs reasonably relied on them."[7] *Id*. at 726.

In plaintiffs' proposed fraud claim, it is alleged that defendants deliberately misrepresented and concealed facts to plaintiffs during the bankruptcy proceedings. In particular, plaintiffs claim that defendants led plaintiffs to believe that "they had legal representation in the Bankruptcy Court through the USW's in-house counsel in Pittsburgh," that defendants "deliberately misled [p]laintiffs into believing they did not have to file a proof of claim or otherwise protect their own interests in the Bankruptcy Court[,]" that defendants misrepresented that they had brought plaintiffs' rights to the attention of the Bankruptcy Court, and that defendants misrepresented that "notwithstanding anything that might transpire in the Bankruptcy Court, [plaintiffs']

---

[6] The court also acknowledged its prior decision in *Adkins*. In rejecting the applicability of that decision, the court noted that, in *Textron*, "the Supreme Court made clear that a simple claim of fraudulent inducement to sign a labor contract, without more, is *not* a 'suit for violation of contracts,' and so is not pre-empted by § 301.'" *Id*. at 725 (emphasis in original).

[7] The Sixth Circuit also relied upon the decision in *Caterpillar*, where "the Supreme Court held that claims that the plaintiffs' employer had breached individual promises of employment security to the plaintiffs by firing them, did not give rise to complete preemption under § 301, even though the firings took place during a time when plaintiffs were unionized employees governed by a CBA." *Id*. at 725-26 (citing *Caterpillar*, 482 U.S. at 394, 399).

15

rights would be protected by" defendants. (Proposed Am. Compl., Doc. No. 22-1, ¶¶ 42-45.) Plaintiffs further allege that they relied on these material misrepresentations to their detriment. (*Id*. ¶¶ 46-47.)

The Court finds that the allegations in plaintiffs' proposed fraud claim present a close call, but that the analysis in *Alongi* compels a finding that the claim is not subject to complete preemption. There is no question that the memorandum agreement—a § 301 labor contract—is lurking in the shadows of this fraud claim. Nonetheless, the alleged misrepresentations took place *after* the memorandum agreement was penned and are separate from that agreement. A court (or fact finder) would not be required to apply the provisions of the memorandum agreement, but only to determine whether the representations were made and whether plaintiffs relied on these representations in not filing a claim during the bankruptcy proceedings. Under these circumstances, the claim is not completely preempted by § 301. *Cf. Bd. of Tr. of Ohio Laborers' Fringe Benefits Programs v. W. End Land Dev., Inc*., 664 F. Supp. 2d 850, 856 (S.D. Ohio 2009) (fraud claim was completely preempted by § 301 where evaluation of a claim that union misrepresented the scope and nature of the collective bargaining agreement would "require[] an examination of the actual scope and nature of the terms of the CBA").

Accordingly, the Court finds that it would not be futile for plaintiffs to

16

amend their complaint to add a claim of fraudulent misrepresentation under Ohio law.[8] Plaintiffs' motion for an extension of time in which to amend to assert a common law fraud claim is GRANTED. Plaintiffs are granted leave to file an amended complaint that contains the proposed fraud claim but omits the completely preempted contract and tortious interference claims. To withstand a finding of complete preemption, the amended complaint must also omit any request to enforce the memorandum agreement or to seek damages under that agreement. Assuming plaintiffs timely file a fully complying amended complaint, the Court shall remand the matter to state court.

## IV. PLAINTIFFS' MOTION TO CERTIFY

Plaintiffs have also moved the Court "to certify its Order as final and appealable, pursuant to 28 U.S.C. § 1292(b), 'Interlocutory decisions,' and to stay proceedings in this Court pending hearing of the interlocutory appeal by the Sixth

---

[8] Defendants also argue that plaintiffs' motion should be denied on the basis of bad faith because plaintiffs allegedly chose to "hold their fraud claim in reserve" while the Court considered whether the initially plead claims were completely preempted. (Opp. at 222.) In support, defendants cite *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 347 (6th Cir. 2007) (undue delay in seeking amendment where plaintiff made a strategic decision to wait to amend justified denying leave to amend), and *Jones v. W. Reserve Transit Auth.*, 455 F. App'x 640, 654 (6th Cir. 2012) (a plaintiff's "strategic decisions to strip the district court of jurisdiction [a]re surely not what the Supreme Court had in mind" when it said amendments should be freely allowed so that claims could be heard on the merits). Plaintiffs state that they "expressly avoided bringing any federal claims and reluctantly avoid specifying in detail the basis for their existing fraud claim, confident their Complaint belonged in state court." (Mot. at 182.) While the Court is troubled by the fact that plaintiffs appear to have been aware of the factual predicate for their fraud claim at the outset of this litigation, the Court is also mindful that plaintiffs are the masters of their complaint and have a right to choose to plead claims based strictly on state law to avoid federal jurisdiction. "The well-pleaded complaint rule generally provides that the plaintiff is the master of his complaint, and the fact that the wrong asserted could be addressed under either state or federal law does not ordinarily diminish the plaintiff's right to choose a state law cause of action." *Alexander v. Elec. Data Sys. Corp.*, 13 F.3d 940, 943 (6th Cir. 1994) (citing, among authorities, *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 13, 22, 103 S. Ct. 2841, 77 L. Ed. 2d 420 (1983)). While complete preemption is the corollary to the well-pleaded complaint rule, a plaintiff still retains the right to plead a claim outside of the realm of preemption, if the facts will support such a claim. The Court finds that plaintiffs did not act in bad faith, and it will not penalize plaintiffs for their failure to properly calculate the reach of § 301 preemption. Moreover, given the fact that it is still early in this case and no discovery has taken place, defendants will not be prejudiced by the amendment.

Circuit." (Mot., Doc. No. 16, at 179.) In support of their request for immediate certification, plaintiffs cite to the unreported decisions in *Wayt* and *Dobrski*, and suggest that the "issue is one that bears further review." (*Id*.) Because the Court views plaintiffs' motion as a request for alternative relief, and the Court has granted their motion for an extension of time in which to amend, the Court DENIES this motion as moot.[9]

## V. CONCLUSION

For all of the foregoing reasons, plaintiffs' motion for reconsideration is DENIED, plaintiffs' motion for an extension of time in which to amend the complaint is GRANTED, and plaintiffs' motion to certify is DENIED as moot. Plaintiffs shall have leave until October 2, 2014, to file an amended complaint that asserts a common law fraud claim that is fully compliant with the requirements set forth in this Opinion and Order.[10] Should plaintiffs timely file such an amended pleading, the Court shall remand this matter to the state court. Should plaintiffs fail to file an amended pleading that relieves this Court of subject matter jurisdiction, the Court shall dismiss the complaint as

---

[9] In any event, plaintiffs failed to meet their burden under § 1292. This Court may certify an interlocutory appeal of its prior order if the Court "shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation[.]" 28 U.S.C. § 1292(b). Plaintiffs' reference to two unreported district court cases that are easily distinguished, and do not identify a change in or uncertainty regarding the law, fails to demonstrate a controlling question of law on which there could be substantial ground for a difference of opinion.

[10] The Court will determine, without additional briefing by the parties, whether any amended complaint plaintiffs may file is fully compliant with the Court's instructions in this Opinion and Order.

preempted under § 301 of the LRMA.

**IT IS SO ORDERED**.

Dated: September 25, 2014

                                              **HONORABLE SARA LIOI**
                                              **UNITED STATES DISTRICT JUDGE**